## THE XENIA BRANCH BANK a. LEE.

*New York Superior Court ; Special Term, October,* 1858.

*Again, General Term, November,* 1858.

PLEADING.—COUNTER-CLAIM.—SEPARATE STATEMENT.—DECISION.

Each defence separately stated as a separate defence must be in itself complete, and must contain all that is necessary to answer the whole cause of action, or to answer that part thereof which it purports to answer. The former rule in this respect is not relaxed by the Code.

A defence claiming to be separately stated, but not complete in itself, and only to be made complete and sufficient by resorting to portions of other defences contained in the same answer, is insufficient, and bad on demurrer.

The Xenia Branch Bank *a.* Lee.

*It seems,* that it might be otherwise, where for the purpose of avoiding repetition of facts alike applicable to each of several defences, the pleader should aver them either in one of his distinct and separate statements of a defence, &c., or by way of introduction to all, and thereafter in his subsequent separate statements, by distinct and intelligible reference clearly include them in each.[*]

The defect of a counter-claim or defence in such a respect is a substantial defect, such that the court should not sustain it on demurrer as sufficient, although the objection to its sufficiency in such respect was not discussed or raised upon the argument.

In an action in the nature of trover, by a plaintiff who has indorsed notes or bills of exchange, brought to recover the value thereof from a defendant, in whose possession they are, and who claims title thereto through the plaintiff's indorsement, it is competent for the defendant to set up title in himself, demand of payment, protest, and notice, and ask by way of counter-claim, a judgment against the plaintiff as indorser.

Such a claim is a proper subject of counter-claim in such action, both as arising out of the contract which forms the foundation of the plaintiff's claim, as arising out of the same transaction as his cause of action, and as immediately connected with the subject of the action.

Section 150 of the Code analyzed and construed, and the doctrine of counter-claims discussed.

I. *October,* 1858. Motion to strike out a counter-claim from an answer.

The action was brought to recover damages for an alleged conversion of certain bills of exchange. The complaint of the plaintiffs, a corporation created by the laws of Ohio, alleged that they became possessed of certain bills of exchange and acceptances (which they enumerated), by taking and discounting them in the regular course of business; that, to facilitate the collection of them, they indorsed and transmitted them to their agent, the Ohio Life Insurance and Trust Company, at its office in New York; that such company was only authorized to collect and pay the proceeds to the plaintiffs, without power to sell, pledge, or otherwise dispose of them; that such company was

---

[*] Compare Landau *a.* Levy (1 *Ante,* 376). It has always been held unnecessary to restate in a succeeding count facts contained in a former count which were necessary matters of inducement to both; but in such case the plaintiff might, and in some cases it was said he ought to, refer in one count to the preceding parts of the declaration. (Barnes *a.* May, *Cro. Eliz.,* 240; Tindall *a.* Moore, 2 *Wils.,* 14; Phillips *a.* Fielding, 2 *Blackst.,* 123, 131; Crookshank *a.* Gray, 20 *Johns.,* 344; Griswold *a.* The National Insurance Company, 3 *Cow.,* 96; Freeland *a.* McCullough, 1 *Den.,* 414.) And see Nelson *a.* Swan (13 *Johns.,* 483).

indebted to the defendants for money loaned upon usurious interest, and transferred and delivered the bills and acceptances in question to the defendants as collateral security for such usurious and precedent indebtedness; that the defendants took the same, with knowledge that they were the property of the plaintiffs, and that the Trust Company had no power to transfer the same.

A statute of Ohio was then set forth, under which the plaintiffs became incorporated, by which it was enacted that no notes or bills discounted by such bank should be assignable, except for collection, or to pay and redeem the circulating notes of such bank, or to pay its liabilities; and it was alleged that the defendants had notice of this statute.

The complainant then stated a demand and refusal to deliver; an unlawful detention and conversion; that the value of the securities was the sum of $51,833.86, and demanded judgment for such sum.

The answer denied the allegations of the complaint, and averred that the several drafts or bills of exchange mentioned were indorsed in blank by the Ohio Life and Trust Company, by Edward Ludlow, its cashier, and were delivered to the defendants before their maturity; that they were received in good faith, without any notice of their being the property of the plaintiffs, or not being the property of the said Ohio Life and Trust Company, and were delivered and received as collateral security for the payment of lawful money loaned to such company, on the faith and credit of such bills of exchange so indorsed; that the amount loaned was equal to the amount payable by the terms of the drafts, and became due before the demand made upon them: further, that the plaintiffs had received the full amount of the drafts or bills from the drawers or indorsers; that the plaintiffs were at the commencement of the action, and still were, indebted to the Ohio Life and Trust Company in an amount exceeding the whole amount of the drafts, and the defendants, therefore, claim the right to retain them as indorsees of such company.

The answer then set up, by way of counter-claim, the making of the several drafts by the respective makers, with dates, &c., in favor of Jas. B. Scott, cashier, or order, addressed to E. Ludlow, cashier of the Ohio Life and Trust Company; that the

plaintiffs were in fact the payees of them respectively, Scott being their cashier; set forth their indorsement by Scott, as such cashier, and delivery to the Ohio Life and Trust Company, who became the legal owners and holders thereof; the indorsement of them by the cashier of such company, and delivery to the defendants; the due presentment at maturity at the office of the company, to the cashier, on demand, and refusal, protest, and notice to the plaintiffs, and its reception. The defendants alleged that there was due upon the bills an aggregate amount of $51,833.86, with interest as stated, and demanded judgment for the sum against the plaintiffs.

The plaintiffs moved, at special term, to strike out from the answer this counter-claim, on the ground that it was not one which the Code authorized to be set up in such an action.

*William Stanley,* for the motion.

*Clarence A. Seward,* opposed.

HOFFMAN, J.—The question is thus presented: The plaintiffs have brought an action to recover damages for the unlawful detention and conversion by the defendants of certain bills of exchange, which they aver belonged to them, and were illegally obtained and converted by the defendants. The defendants admit the possession, deny the property or right of the plaintiffs, insist upon the legality and justice of their own title, state the mode of acquiring the possession in good faith and for value, and make out, upon their own showing, a case of a full defence to the plaintiffs' claim. They then aver that the plaintiffs are indorsers upon the bills, a demand at maturity of the drawees, refusal, protest, and notice; and they claim judgment against the plaintiffs for the amount. Can such a counter-claim be admitted under the Code?

Section 150 warrants a counter-claim in favor of a defendant against a plaintiff, for a cause of action arising out of the transaction set forth in the complaint, as the foundation of the plaintiffs' claim, or connected with the subject of the action. (§ 150, *subdiv.* 1.)

The transaction out of which the plaintiffs' claim arises, or on which it is founded, is the delivery to, or possession by, the defendants, of the bills in question.

The case of the plaintiff is, that such delivery and possession gave no title to the defendants; the claim of the defendants is, that it vested in them a full right to the bills and their avails, and necessarily to all remedies against all parties to them. Thus the plaintiffs' claim, and the defendants' demand, seem strictly to spring from the same transaction, although other circumstances attending that transaction will make the case turn in favor of the one or the other.

Again, what meaning is to be given to the broad language, " or connected with the subject of the action?" The subject of the action is the possession and right to the bills. The cause of action of the plaintiffs is the illegal withholding of them by the defendants. The cause of action of the defendants is the legality of their possession and ownership. The cause of action of each is connected with the same subject.

The legal character of a counter-claim, under the Code, was fully discussed in the case of Gleason a. Moer (2 *Duer*, 642). It is such a cause of action as, under the former system, would have sustained an action at law, or a suit in equity, against the plaintiff on record. The old set off is comprised; any claim on contract, sealed or unsealed, and whether the damages are liquidated or unliquidated, is included; and also, any breaches by the plaintiff of any promise or contract on his part contained in the contract sued upon; any equitable relief against a legal demand, formerly attainable by a bill in Chancery; and any affirmative relief which, in equity suits, could be had by a cross-bill.

Comprehensive as this description of a counter-claim is, and clearly as it defines the law, at least in our court, it perhaps does not, by any logical inference, include precisely the present case. Certainly, however, there is nothing to exclude its being comprised within the legal scope and meaning of a counter-claim.

In the case of The Mayor of New York a. Maybie (3 *Kern.*, 151), it was held, independently of the Code, that in an action by a lessor for rent, the lessee might recover damages sustained by a breach of an implied covenant for quiet enjoyment. In the court below, the question was suggested whether, under the Code, it might not be done, but the case depended upon the law before the Code.

In Drake *a.* Cockroft (1 *Abbotts' Pr. R.*, 203 ; S. C., 10 *How. Pr. R.*, 377), the action was for rent reserved in a lease, and the defendant set up a claim for damages resulting from the plaintiff's breaking open a stable, part of the premises hired, and taking away certain personal property. This, it was held, he could not do. A mere trespass was no more connected with the subject of an action brought for rent, than an assault and battery of the tenant by the landlord would be.

Mr. Justice Woodruff, in delivering the opinion of the court, states propositions fully coextensive with the principle of the decision in The Mayor, &c. *a.* Maybie, subsequently made. (See page 208.)

In Ashins *a.* Hearne (3 *Abbotts' Pr. R.*, 184), Justice Emott thought that a counter-claim could not be sustained upon the following facts :—The plaintiff sued for damages for the conversion of a ring. The defendant alleged an exchange of rings, each to be kept until the other should be returned, and averred a tender of the one and demand of the other, and asked judgment for his ring, or its value.

It is supposed that the ground of this case is, that opposite causes of action for *tort* cannot be the subject of counter-claim. Yet, perhaps, a distinction may be suggested—that where the ground of each claim is really a contract, although the form of action under the old system would be for a wrong, then, when the transaction which gives rise to each is the same, the Code is broad enough to include a counter-claim. The exchange alleged of the rings was, in fact, a mutual agreement.

In Pattison *a.* Richards (22 *Barb.*, 143), the action was for damages in diverting the water of a stream from the plaintiff's land, by ditches cut on the land of the defendant. The defendant set up a claim for the violation of an agreement by the plaintiff, relative to the deepening of the channel of the stream through their respective lands made four years previously. It was held by the general term to be inadmissible as a counter-claim.

It is apparent, that the alleged counter-claim did not arise from the same transaction, and was not connected with the subject of the plaintiff's action, except in the most indefinite and remote manner, as relating to the land. But the learned judge does state, that in an action of tort, previous to the Code of 1852, set-

offs were not allowed; nor are they now allowed as counter-claims, under the second subdivision of section 150 of the Code of 1852. Counter-claims, under the Code of 1852, embrace both set-offs and recoupments, as they were understood prior to the Code.

Assuming that, in a pure action of tort, as before understood, no counter-claim for a tort is permissible, we do not yet obtain a rule which would clearly exclude a claim to or upon a piece of property or chose in action, by contract express or implied, when the plaintiff's demand is to recover that property or its value. And, as I have before endeavored to show, every essential element, either in relation to the transaction or subject-matter, required by the Code, is in this case found to exist.

I think the counter-claim is properly set up within the Code, and the motion must be denied. Order accordingly.

II. *November*, 1858. Appeal from order overruling demurrer to counter-claim.

It being afterwards considered that a demurrer was the proper form of raising the objection to the counter-claim in question instead of a motion, by arrangement between counsel, made with a view to bringing the question before the court at general term, a demurrer was drawn up and interposed by the plaintiff, and an order overruling it thereupon entered at the special term.

The demurrer was in the following form :

The plaintiff above named demurs to so much of the answer of the defendants herein, containing new matter, as purports to be a counter-claim, and which is set forth at folio eleven, as a fifth separate defence to the cause of action set forth in the complaint, and specifies the following grounds of demurrer :

1. Said new mattter in said answer does not contain facts sufficient to constitute a ground of defence to the cause of action set forth in the complaint.

2. That the said new matter does not constitute a counter-claim.

3. That it does not appear, on the face of the pleading herein, that said new matter states facts which constitute any ground of defence, or any counter-claim.

4. That it does not appear, on the face of the answer herein,

that said new matter contains facts which constitute a counterclaim or defence.

5. That it does not appear on the face of said alleged counterclaim, that it states facts sufficient to constitute a counter-claim or defence.

From the order entered, overruling this demurrer, the plaintiffs now appealed.

*William Stanley*, for the appellants.—I. A counter-claim can only be set up as a defence to the plaintiffs' action. The matter here set up as a counter-claim presupposes that the plaintiff has no cause of action. If the plaintiff's action is sustained, the counter-claim falls to the ground. It is only in the event of the plaintiff's action being defeated on other grounds, that the counter-claim can be made available. This is not admissible : a counter-claim can only be set up as a *defence;* it presupposes that in the absence of the counter-claim the plaintiff would recover. Such is undoubtedly the rule in respect to set-off. Thus, in Tomlin's Law Dictionary, a set-off is defined to be " a mode of defence whereby the defendant acknowledges the justice of the plaintiff's demand on the one hand, but on the other hand sets up a demand of his own to counterbalance it, either in the whole or in part." In Burrill's Law Dictionary it is defined thus: " *A counter-claim* or demand, a cross demand ; a demand set up against another demand for the purpose of reducing its amount, or of extinguishing it altogether. A mode of defence to a civil action, being a species of plea in bar, by which a defendant alleges a reciprocal debt due to him from the plaintiff, and claims to have it allowed by way of discharge from the action, whether wholly or in part, as the case may be." So in Byles on Bills (7th ed.), 316, it is said: " *Compensatio,* in the Roman law, corresponds with set-off in the English law; but the provisions in the civil law, for setting one demand against another, are more liberal and extensive than in ours (*compensatio* is defined by the civilians, *debiti et crediti inter se contributio*): set-off signifies the subtraction or taking away of one demand from another opposite or cross demand, so as to extinguish the smaller demand, and reduce the greater by the amount of the less; or if the opposite demands are equal, to extinguish both. It was also formerly sometimes called stoppage—because

the amount sought to set-off was *stopped*, or deducted from the cross demand." The same is true also of recoupment. Thus, in Nichols *a.* Dusenbury (2 *Comst.*, 286), Bronson, J., in defining recoupment, says: "It is in the nature of a cross-action. The right of the plaintiff to sue is admitted, but the defendant says he has been injured by the breach of another branch of the same contract, on which the action is founded, and claims to stop, cut off, or keep back so much of the plaintiff's damages as will satisfy the damages which have 'been sustained by the defendant." So in Vassear *a.* Livingston (3 *Kern.*, 257), Marvin, J., says: "Recoupment always implies that the plaintiff had a cause of action, but the defendant alleges that he too has a cause of action, growing out of a breach of some other part of the contract upon which the action is founded, or for some other cause connected with the contract, and it is in the nature of a cross-action." The counter-claim under the Code does not differ in this respect from set-off and recoupment. The term itself signifies a claim *in opposition* to the claim of the plaintiff. It can have no other intelligible meaning. In Silliman *a.* Eddy (8 *How. Pr. R.*, 123), Crippen, J., said: "The compound counter-claim, as used in the Code, must be regarded, and in my judgment, construed to mean *an opposition* claim or demand of something due—a demand of something which of right belongs to the defendant *in opposition* to the right of the plaintiff." In Davison *a.* Remington (12 *How. Pr. R.*, 312), Harris, J., says: "When a defendant sets up a counter-claim in pleading, he assumes that the plaintiff has a cause of action against him, and proposes to meet it by establishing another cause of action against the plaintiff." In Gage *a.* Angel (8 *How. Pr. R.*, 336), W. F. Allen, J., said: "The term counter-claim is sufficiently comprehensive to embrace any claim, or demand of any right, or of any amount due or supposed to be due, *adverse or in opposition* to the claim or demand of the plaintiff. *All claims* and *demands* of the defendant against the plaintiff in an action, which, if allowed, will reduce or overrun the plaintiff's claim, may be said to be counter-claims, that is, *adverse to that of the plaintiff.*" There is nothing in section 150 of the Code opposed to this view. The first subdivision embraces recoupment, and nothing else. This will become very evident upon comparing this provision with the case of Batterman *a.* Pierce

(3 *Hill*, 171). The second subdivision embraces set-off, and extends the principle of set-off to all causes of action arising on contract, whether liquidated or not. This, it is submitted, is the only change introduced by the section in question.

This view is fully sustained by Marvin, J., in Vassear *a.* Livingston (3 *Kern.*, 256, 257). The learned judge, after showing that the matter set up as a counter-claim did not constitute a case of set-off or recoupment in any form, says (p. 257), "The counter-claim of the Code is undoubtedly broader and more comprehensive than set-off and recoupment. It authorizes a resort by the defendant to causes of action *by way of defence*, other than set-off or recoupment." What other causes of action? The learned judge immediately explains: "By the second subdivision of section 150, in an action arising on contract, the defendant may avail himself, by *way of defence*, of any other cause of action arising also on contract, and existing at the commencement of the action." So in Drake *a.* Cockroft (1 *Abbotts' Pr. R.*, 203; S. C., 10 *How. Pr. R.*, 382), Woodruff, J., commenting upon the first subdivision, said: "The provisions of the Code above referred to were designed to affirm the right of a defendant to recover his damages *in those cases in which a recoupment was proper before the Code was enacted.* If the Code extends the right to any other cases not within the law of set-off (which I doubt), they are not such as are exhibited by the answer now in question."

Section 274 of the Code claims nothing inconsistent with the above view. The second subdivision of that section enables the court to give the defendant judgment for a balance, when his counter-claim exceeds the claim of the plaintiff. (Woodruff, J., in Ogden *a.* Coddington 2 *E. D. Smith's C. P. R.*, 325, 326.) This gives sufficient scope to the provision, so far as counter-claims are concerned. Section 274 does not purport to determine what a defendant may set up in his answer; it merely enables the court to give judgment upon what shall be properly set up.

The doctrine of cross-bills has no application to actions at common law. They are applicable solely to the complicated transactions which form the subjects of suits in equity. By section 150 of the Code, a counter-claim must refer to the cause of action which it is "intended to *answer.*"

II. Section 150 of the Code does not authorize a counter-claim to be set up in an action of tort.

The second subdivision clearly does not; nor does the first, upon any correct construction. The latter only embraces cases of recoupment, and is undoubtedly confined to actions of contract. The word " transaction" is used merely for the purpose of embracing " the whole of a contract and its accessories, whether existing in one or more writings, or having mutual or independent stipulations." (2 *Sandf.*, 126.) It does not embrace a tort. Assuming, however, that it may, the only " transaction" set forth in the complaint, as the foundation of the plaintiff's claim in an *action of tort*, is the tort itself. Nothing else can possibly have any thing to do with the case. Thus in the present case, the sole foundation of the plaintiff's claim is the *conversion* by the defendant of the plaintiff's property. If the complaint contains any thing more, it is irrelevant—a mere matter of evidence. How then is it possible for a cause of action in favor of a defendant to arise out of a pure simple tort, committed by himself? It is clearly impossible. Nor do the words, " or connected with the subject of the action," at all help the matter. The " subject" of an action must mean the same as the " foundation" of an action. In the present case, the " subject" of the action is the conversion. The words " subject of the action" should be construed, not as relating to the thing itself, about which the controversy has arisen, but as referring rather to the origin and ground of the plaintiff's right to recover. (*Van Santvoord's Pl.*, 2d ed., 65.) How is it possible for a cause of action in defendant's favor to be " *necessarily* connected with—that is, growing out of, or the direct result of—" a tort committed by himself? It is impossible for any other cause of action to have any legal connection with a tort. Therefore the words, ' or connected with the subject of the action,' do not add any thing material to what goes before."

Here the counter-claim presupposes that the defendant has not committed any tort. Then the plaintiff's action has no subject. (And see Haskins *a.* Stearns, 3 *Abbotts' Pr. R.*, 184; Diddell *a.* Diddell, *Ib.*, 167.)

III. Assuming that there may be cases in which a counter-claim may be set up in an action of tort, the present is not one of them. The plaintiff has brought an action of trover to re-

cover bills of exchange. The defendants set up a right to re-
cover on the same bills against the plaintiff as indorser. This
claim has nothing whatever to. do with the plaintiff's cause of
action. It is wholly immaterial whether the plaintiff ever in-
dorsed the bills or not; or if he did, whether he is liable on his
indorsement. This right to recover against the defendants is
wholly independent of any such consideration.

IV. It does not appear, by the answer, that the bills or notes
on which the defendant bases his counter-claim, are the ones
referred to in the complaint.

*Clarence A. Seward*, for the respondents.—I. The Code
(§ 153) allows but one ground of demurrer to new matter in an
answer, viz., " where upon its face it does not constitute a coun-
ter-claim or defence." If, therefore, the new matter set up here
constitutes either a defence or a counter-claim, the demurrer
must be overruled.

II. The new matter set up could not have been proved if not
pleaded. (The New York Central Insurance Company *a.* The
National Protection Insurance Company, 20 *Barb.*, 473; Velsey
*a.* Western, 2 *Comst.*, 506; Field *a.* The Mayor, &c., 2 *Seld.*,
179.) It is pleaded as a *defence*, and section 149 of the Code
allows it to be so pleaded. The legal title of the defendants is
a defence to the trover, and if the facts pleaded show legal
title, they show a defence, and the demurrer must be over-
ruled.

III. If the evidence necessary to prove this new matter is
admissible under the general issue, or under any other defence
contained in the answer, the defendants have mistaken their
remedy. They should have moved to strike out under section
160. The only question the court can now decide is, Does this
new matter constitute a defence?

IV. The transaction set forth in the complaint, and the sub-
ject of the action, is these acceptances. Obviously the counter-
claim is connected with the transaction, and the subject of the
action. Inasmuch as the counter-claim is based upon the ac-
ceptances, without which there would be no transaction, and no
subject of action, it is necessarily connected with the subject of
the action, and is properly interposed. It is based on the aver-
ment in the complaint of the indorsement of the acceptance,

without which indorsement the plaintiffs could not make title
to the acceptance. (See the cases on the subject of counter-
claim, cited by the court below.)

By the Court.*—Woodruff, J.—The plaintiffs herein, by
their complaint, alleged the drawing of sundry bills of ex-
change, in the State of Ohio, by various drawers: the discount-
ing of such bills by the plaintiffs in regular course of business,
whereby they became the lawful holders and owners thereof: the
indorsement of the said bills by them to the Ohio Life and Trust
Company for collection, and the transmission thereof to the said
company at New York for that purpose only : the transfer and
delivery of the bills to the defendants in this suit by the said
company, unlawfully, without authority, and in violation of its
duty; and as collateral security for a precedent usurious in-
debtedness, owing by the company to the defendants : that the
Trust Company had no authority to transfer the bills : that the
defendants took them, chargeable with knowledge that the same
were the property of the plaintiffs, and that the Trust Company
had no authority so to transfer or deliver the same : the reten-
tion of the bills by the defendants : a demand of the same from
the defendants by the plaintiffs, and a refusal to 'deliver them.
And the plaintiffs thereupon demand judgment for the value
of the bills, with interest from the maturity thereof respect-
ively.

That portion of the defendant's answer which is demurred to,
and which is stated *fifthly* as a "separate defence," sets forth
with greater particularity the drawing of the bills; the terms
thereof, and their delivery to the plaintiff; the indorsement
and delivery thereof by the plaintiffs to the Ohio Life Insurance
and Trust Company; and the indorsement and delivery thereof
by that company, for value, to the defendants, averring that the
defendants then became, and now are, the legal owners and
holders thereof.

The answer then avers a demand of payment—refusal, pro-
test, and notice to the plaintiffs as indorsers—and claims, there-
upon, to have judgment against the plaintiffs for the amount
thereof.

---

* Present, Bosworth, Ch. J., Hoffman, Slosson, and Woodruff, JJ.

The plaintiff's demurrer assigns for cause, that this part of the answer does not state facts sufficient to constitute either a defence or a counter-claim.

If we are to consider this fifth and separate defence as it is pleaded, viz., a *separate defence* to the action, and judge of its sufficiency as an answer to the complaint, it is material to notice that it does not contain any denial that the transfer by the Ohio Life and Trust Company to the defendants was without authority; that the bills were held by that company for collection only; that the transfer was in violation of the duty of that company to the plaintiffs; that the defendants took them chargeable with knowledge that the same were the property of the plaintiffs, and that the company had no authority so to transfer them; and, especially, that the bills were transferred to the defendants by the company as a collateral security for a precedent usurious indebtedness.

It is quite obvious that if these bills were transferred to the defendants in fraud of the rights of the true owners (the plaintiffs), and only to secure an antecedent debt, the defendants are not entitled to retain them as against the plaintiffs; nor can they make a title so acquired the foundation of any claim to recover the amount thereof from the plaintiffs under the indorsement by the latter.

And it is equally clear that if the bills were so transferred in fraud of the plaintiff's rights, but to secure to the defendants a usurious demand claimed by them of the Trust Company, the defendants have no title to retain them from the plaintiffs nor found a counter-claim thereon.

And so, if the averment that they took them chargeable with knowledge that the same were the property of the plaintiffs, and that the Trust Company had no authority to transfer them, may be regarded as a statement of a fact, then their title to retain the bills, and their title to set them up as a counter-claim, equally fail.

The answer in this case contains, it is true, a denial of the allegations of the said complaint, and each and every of the said allegations. This is the "first" defence set up in the answer. If this may be referred to, and be made to spell out the fifth defence, then it is not true that the allegations above referred to are not denied. But it is equally true that if in determining the sufficiency of the fifth defence we are to take the first de-

fence to be true, then the defendants have no title, for the counter-claim rests upon the very same transfer to the defendant which the complaint alleges, and which this first defence denies; and if no such transfers were made, or if no such bills were drawn as the complaint alleges, then, whether the plaintiffs have any title to recover or not, it is clear that the defendants have no counter-claim.

This palpable conflict of allegations, if it shows nothing else, illustrates the impropriety and inconsistency of attempting to sustain one defence, pleaded separately, by incorporating therein another distinct defence containing averments partly consistent and partly inconsistent therewith, and which, if taken to be wholly true, would destroy the defence sought to be aided.

Other considerations, however, which seem to us to be quite conclusive, forbid the attempt thus to bolster up a defence separately pleaded, and affirm the true rule to be, that each defence so separately pleaded must be in itself complete, and must contain all that is necessary to answer the whole cause of action, or to answer that part thereof which it purports to answer.

Section 150 of the Code permits a defendant to set forth by answer as many defences and counter-claims as he may have, whether legal or equitable, or both. They must each be separately stated, and refer to the causes of action which they are intended to answer in such manner that they may be intelligibly distinguished.

This language of itself imports, that when more than one defence or counter-claim is interposed, each must be a sufficient defence or counter-claim to answer that cause of action to which it is addressed; or where the cause of action can be divided, then to answer a part thereof. The provision in this respect is even more explicit and guarded than the similar language in the Revised Statutes, which permitted " the defendant in any action to plead as many several matters as he shall think necessary for his defence." (2 *Rev. Stats.*, 352, § 9, 27.)

The requirement to state them *separately* imports that these separate statements are not to be parts of a defence. Unless they are legally complete and sufficient, they are not defences; and if it is necessary to their completeness to refer to and include part of what is alleged as another distinct defence, then they are not separately stated.

This is made still more clear by section 153, which permits the plaintiff to "demur to one or more of such defences or counter-claims, and reply to the residue of the counter-claims." The reason for requiring a separate statement of each defence or counter-claim here becomes apparent. It is not merely that the pleading may be thereby presented in an orderly form and be more intelligible, but that the plaintiff may address his demurrer specifically to any one of the separate statements set up as such defence or counter-claim, and allege its insufficiency.

It is unnecessary to do more than refer to the familiar rule under our former system, that required each *plea* to be complete in itself, and to constitute a complete defence to the allegations to which it was addressed. (2 *Chitty*, *Pl.*, 511; Narius *a.* Keelen, 2 *Johns. R.*, 63; Spencer *a.* Southwick, 18 *Ib.*, 593; Hallett *a.* Holmes, 18 *Ib.*, 28; Van Ness *a.* Hamilton, 19 *Ib.*, 349.)

The same reason now exists, and there is nothing in the language of the Code indicating that the rule is now relaxed; but, as already intimated, the contrary is plainly involved in the provisions of the Code itself.

How far it may be competent for a defendant, for the purpose of avoiding repetition, to aver, once for all, certain facts alike applicable to each of several defences or counter-claims, and, having averred them either in one of his distinct and separate statements of a defence, &c., or, by way of introduction to all, to refer thereafter, in his subsequent separate statements, intelligibly and distinctly to them, so as by reference to clearly include them in each, it is unnecessary to consider. No such attempt is made in the present case.

These views inevitably lead to the conclusion that the fifth "separate defence" here demurred to is insufficient. It contains no denials of the allegations in the complaint above enumerated, nor any averments inconsistent therewith. These allegations must, therefore, for the purposes of this demurrer, be taken as admitted.

We are not unmindful of the circumstance that the arguments addressed to us, in support of the demurrer upon this appeal, did not embrace the objections to the answer which have thus far been considered; and the suggestion may naturally arise, that the court are not called upon to seek out defects in the answer to which counsel have not called their attention. This

may sometimes be so where the objections relate to matters which are formal merely, or which would be cured by a trial and verdict upon the very right of the matter. But we are not willing in this case to enter a deliberate judgment, which on the record pronounces this defence a sufficient defence, when we are clear that it is wholly defective and insufficient. Indeed, it is very far from clear that, by so doing, we should not injure the very party in whose favor we should so pronounce judgment; for should that judgment become the subject of review in the court of last resort, it must, we think, be pronounced erroneous, and be reversed. And we do not see how that court could be informed what arguments were urged here, or that we did not decide on all grounds that the defence was sufficiently pleaded.

The reasons given are therefore decisive of the present appeal, and we might dismiss the subject without disposing of the question actually argued. But the parties have come to the discussion of this appeal for the purpose of testing the defendants' right to set up the matters contained in this answer as a counterclaim. There is little doubt that the defendants will amend their answer, by inserting in the fifth defence the matters of denial which are already contained in other parts of the answer, and which, if inserted in the fifth defence, would relieve it from the objections which have been noticed. And if we refrain from the expression of an opinion upon the main question, we probably only put the parties to the expense and delay of coming here again upon a fresh demurrer and new appeal, to argue again the very question already fully and ably argued on this occasion. Under these circumstances, we think they are now entitled to our views upon that question.

Indeed, if we have considered that question, and are of opinion that such a counter-claim is not to be allowed, it may be pertinently asked, why should the court consider at all the defects in the answer which have above been pointed out?

The great question in controversy then is—In an action in the nature of trover by a plaintiff who has indorsed notes or bills of exchange, brought to recover the value thereof from a defendant in whose possession they are, and who claims title thereto through the plaintiff's indorsement, can the defendant set up title in himself, demand of payment, protest, and notice,

and ask, by way of counter-claim, a judgment against the plaintiff as indorser?

By section 150, subdivision 1, 2, of the Code, the counter-claim which the defendant may set up in his answer may be, 1st, "A cause of action arising out of the *contract* or *transaction* set forth in the complaint as the *foundation* of the plaintiff's claim, or connected with the subject of the action;" and, 2d, "In an *action arising on contract*, any other cause of action arising also on contract, and existing at the commencement of the action."

This division of the section shows that there may be a counter-claim when the *action itself does not arise* on contract: for the second clause is expressly confined to actions arising upon contract, and allows counter-claims, in such cases, of any other cause of action also arising on contract; and this may embrace probably all cases heretofore denominated " set-off," legal or equitable—and any other legal or equitable demand, liquidated or unliquidated, whether within the proper definition of set-off or not, if it arise on contract. (Gleason *a*. Moer, 2 *Duer*, 642.)

The first subdivision would therefore be unmeaning as a separate definition, if it neither contemplated cases in which the action was not brought on the contract itself in the sense in which these words are ordinarily used, nor counter-claims which did not themselves arise on contract.

This first subdivision by its terms assumes that the plaintiff's complaint may set forth, as the foundation of the action, a " contract" or a " transaction."

The Legislature, in using both words, must be assumed to have designed that each should have a meaning; and, in our judgment, their construction should be according to the natural and ordinary signification of the terms.

In this sense every contract may be said to be a transaction; but every transaction is not a contract.

Again: the second subdivision having provided for all counter-claims arising on contract—in all actions arising on contract—no cases can be supposed to which the first subdivision can be applied, unless it be one of three classes, viz. :

1st. In actions in which a contract is stated as the foundation of the plaintiff's claim—counter-claims which arise out of the same contract; or,

2d. In actions in which some transaction, not being a con-

tract, is set forth as the foundation of the plaintiff's claim—counter-claims which arise out of the same transaction; or,

3d. In actions in which either a contract, or a transaction which is not a contract, is set forth as the foundation of the plaintiff's claim—counter-claims which neither arise out of the same contract, nor out of the same transaction, but which are connected with the subject of the action.

Whether this analysis of the first subdivision makes its import more clear, or will aid it in its application to particular cases, we will not affirm; but we think it is plainly a true distribution of the language of the section, and a necessary reading of the subdivision, if all its terms are to have *any* meaning.

What, then, is meant by the clause which, " in actions in which a contract is set forth in the complaint as the foundation of the plaintiff's claim, permits the defendant to counter-claim a cause of action arising out of the same contract ?"

At the first view, this would seem to provide for a case also covered by the second subdivision. But a moment's reflection suggests that we had, when the Code was enacted, been familiar with a class of actions in which, though a contract was the substantial foundation of the plaintiff's claim, the action was not brought on the contract, but on the duty which the law created. Actions which formerly were called *ex delicto quasi ex contractu*, were of this class ; *e. g.*, actions on the case against common carriers, or against innkeepers, in which the plaintiff might declare on the contract in the form of assumpsit, or on the duty in the form of case *ex delicto*.

And other actions on the case may perhaps furnish examples that would illustrate what is meant by the clause above recited ; *e. g.*, an action on the case for a false warranty—a form of action formerly used—instead of declaring on the warranty as a contract.

In these and similar cases, it may not be altogether inaccurate to say that a contract may be the foundation of the plaintiff's claim, although the action does not arise on the contract.

And in all such cases, a counter-claim, whether it be a cause of action, legal or equitable, arising out of the *same* contract, may be set up by the defendant.

But secondly, the subdivision authorizes, in actions in which a transaction, not being a contract, is set forth as the foundation

of the plaintiff's claim, counter-claims which arise out of the same transaction.

This, we think, includes the case before us. What other legal or equitable counter-claims it also includes, it is unnecessary now to inquire.

The "transaction" here in question may either include the history of the bills of exchange in question, so far as the title of the plaintiffs or defendants depends upon that history; or, the "transaction" may perhaps be confined to the manner and circumstances of the transfer to the defendants.

In the first view of the meaning of that word, "the transaction set forth in this complaint as the foundation of the plaintiff's claim" consists of those facts which are alleged as showing the plaintiffs' title to the bills, their delivery by the plaintiffs for a special purpose to the Trust Company, the transfer by the Trust Company to the defendants, and their assertion of right to detain, or their actual detention thereof.

All these concur to establish the defendants' counter-claim, and are an essential part thereof. In a just sense, the counter-claim arises out of them.

The difference between the parties consists not in a denial by the defendants that the transaction relied upon by the plaintiffs took place, but both admit, and in fact assert, that it occurred. One of the parties connects with it certain particulars, which, if established, establish the plaintiffs' right to recover the bills, or their value. The other connects with the transaction certain other particulars, which, if established, not only refute the plaintiffs' claim, but establish the defendants' right to recover from the plaintiff the amount of the bills.

The parties differ about the accessory facts only; and when, upon the trial, the very truth of the matter is ascertained, the actual transaction (which the plaintiffs set forth as the foundation of their claim, and which the defendants set forth as that out of which their claim arises) will be developed, and one or the other will be seen to be, by reason of that transaction, entitled.

The transaction is, then, single and entire; and it is either a just foundation of the plaintiffs' claim, or it entitles the defendants to what they claim from the plaintiffs.

The particulars about which the parties now differ modify the legal effect which the leading facts will have upon the rights of

The Xenia Branch Bank *a.* Lee.

the parties, and point the transaction favorably to the one or the other. Some facts enter into the plaintiffs' case which, of course, do not enter into the defendants' case, and *vice versa.* But, from the nature of the subject, this must always be so. The Legislature were not so absurd as to mean that the defendant might counter-claim, when the very facts alleged by him, with all their particulars, were identical with those alleged by the plaintiff. For, if to constitute his counter-claim no other facts or particulars were necessary than the plaintiff had himself stated, there would be no occasion for the defendant to answer at all. He should go to trial on the complaint itself.

If, therefore, the transaction set forth in the complaint of the plaintiff as the foundation of the plaintiffs' claim be here regarded as embracing the history of the bills—their drawing— transfer to the plaintiffs—their indorsement to the Trust Company, and the transfer by the latter to the defendants—then the defendants' counter-claim arises out of the same transaction : each party, however, insisting upon certain accessory facts or particulars which make the transaction create a right in the one or the other, as the case may be. And when the actual transaction finally appears, then it will be certain that this same transaction is either a legal foundation for the plaintiffs' claim, or out of it arises a cause of action in favor of the defendants against the plaintiffs.

So, if the transaction set forth as the foundation of the plaintiffs' claim be regarded as more narrow, and as *being the transfer of the bills by the Trust Company to the defendants*, then, as before, the defendants' counter-claim arises out of the same transaction—to wit, that transfer.*

---

* The following cases at special term, in the Supreme Court and New York Common Pleas, illustrate the principles discussed by the court.

GOTTLER *a.* BABCOCK (*New York Common Pleas, Special Term,* 1858) was an action for chattels. The answer alleged that the plaintiff was indebted to the defendant for services, and that the property in question was held by the defendant by virtue of a lien for the amount of such indebtedness ; and the defendants claimed judgment for the amount due him. The plaintiff moved to strike out this defence.

BRADY, J.—The answer in this action is, substantially, that the defendant has a lien upon the property, to recover which the action is brought, for services as a factor or attorney at law, or both. The action is one of those denominated, under the system which prevailed prior to the Code, as an action of tort ; in which set-offs were not allowed, and are not now allowed by the Code. (Pattison

The circumstance that the defendant has to superadd an allegation of demand, protest, and notice to the plaintiffs as indorsers, does not alter the case. This added fact is only a means

---

*a*. Richards, 22 *Barb*., 143), although the defendant may recoup his damages, or set up a counter-claim on a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action. (*Code*, § 150, *subdv*. 1.)

The defence interposed, though good as a lien, and therefore a justification for withholding the things claimed, is not good as a counter-claim upon which the defendant is entitled to affirmative relief. His remedy is to foreclose his lien in the manner provided by law. That portion of the answer objected to, therefore, will not be stricken out because it is good as a defence; but in so far as it is alleged or asserted to be a counter-claim, it must be disregarded. If the lien be established the plaintiff must fail, and judgment be rendered against him on the question of the right to possession, but nothing more. The motion to strike out will, for the reasons assigned, be denied, with $5 costs to abide the event.

ROBINSON *a*. FLINT (*Supreme Court, First District, Special Term*, 1858).—This was an action for damages, for false representations in inducing the plaintiffs to enter into a contract, and for a breach of the contract. The two grounds on which damages were claimed were separately stated in the complaint as separate causes of action. The defendants demurred on the ground, 1. That the first statement did not state facts sufficient to constitute a good cause of action; and, 2. That the two causes of action were improperly united.

*Mr. Hudson*, for the plaintiffs.

*Foster & Thompson*, for the defendants.

INGRAHAM, J.—The complaint avers sundry contracts made by different persons for furnishing iron to the Sacramento Valley Railroad Company, by which a certain quality of iron was to be furnished at a certain price. The plaintiffs afterwards assumed the contract from the company, provided it could be carried out as originally contemplated. They then applied to the defendants to ascertain if the iron originally purchased by the company was still on hand in Boston, and whether the defendants would carry out the contract as originally contemplated. It then avers that the defendants, intending to defraud the plaintiffs, represented to them that the iron was still on hand, kept for the company, and that they were in a condition to carry out the contract, when such representations were known to the defendants to be untrue; that in consequence of such false representations they made a contract with the defendants to deliver the said iron; that the defendants delivered other iron of an inferior quality, and that the plaintiffs were damaged thereby.

These facts show a cause of action for a fraudulent representation. What the damages may be, or whether the plaintiffs claim in their complaint damages such as can be recovered in the action, is not a question to arise on demurrer. The demurrer admits all the facts, and the only question is, whether a good cause of action is made out by them. Of this there can be no doubt. The complaint shows a false representation, known to be false, made on the foundation of a contract with a person deceived thereby, and damages in consequence of such decep-

of showing *how* the defendant's cause of action arises out of the transaction relied upon, and is made complete or consummate.

If it were more doubtful than it seems to us to be, that the

tion. I know no other requisite to make out a sufficient cause of action for a false representation.

The second cause of demurrer is the improper joinder of actions. In addition to the first cause for the tort, the complaint contains a second cause of action, founded on the same contract, which, after referring to the contract, and averring that the defendants by it agreed to send the iron to San Francisco, states that they did not send the iron before mentioned, but delivered iron of inferior quality of much less value, and that they sustained great damage thereby.

It is contended that this claim arises on the contract, and that the other being in tort, the two causes are improperly joined together.

It must be conceded that causes of action arising out of different transactions must be of one of the classes enumerated in section 167, and that one cause for contract and one for tort cannot under such circumstances be united. The latter cause of action is evidently intended to be a claim on contract for not delivering the iron as agreed to by the defendants. It avers no fraud or false representation upon which a tort could be charged, and without that it cannot be said to belong to the same class, as a cause of action, with the first; unless it can be brought within the provisions of the first subdivision—viz., " Where the several causes of action all arise out of the same transaction, or transactions connected with the same subject of action."

It has been held that causes of action, although arising out of the same transaction, cannot be joined if they are inconsistent with each other. (Smith *a.* Hallock, *How. Pr. R.*, 73 ; Sweet *a.* Ingram, 12 *Ib.*, 331.)

But I have not been referred to any case where the court have held that two causes of action arising out of the same transaction, and upon both of which a recovery may be had, may not be united, even if they differ in their nature, and could not therefore be united if they arose out of different transactions.

Section 167 of the Code provides that the plaintiff may unite several causes of action, whether they be such as were denominated *legal, or equitable, or both, where they all arise out of the same transaction, or transactions connected with the same subject of action.*

The plain reading of this section is, that the plaintiff may unite, first, as many legal causes of action as he pleases, arising out of the same transaction : second, as many equitable causes of action as he pleases, arising out of the same transaction : third, as many legal and equitable causes of action as he pleases, arising out of the same transaction : fourth, as many causes of action as he pleases, arising out of different transactions connected with the *subject of the action.*

In Smith *a.* Hallock (8 *How. Pr. R.*, 73), Justice Strong says that this section refers to cases which are consistent with each other—not to those which are contradictory.

In Dorman *a.* Kellam (4 *Abbotts' Pr. R.*, 202), the court held such causes to be improperly united, but those causes did not arise out of the same transaction.

In Badger *a.* Benedict (4 *Abbotts' Pr. R.*, 176), the point was distinctly held that such causes might be united—viz., one in tort and one in contract, both of which arose out of the same transaction.

By transaction, I understand the whole proceedings, commencing with the ne-

counter-claim in this case arises out of the same transaction on which the plaintiff's claim is founded, we should still think it clear that the defendant's counter-claim might be set up. The

gotiation and ending with the performance of the contract, where the matter in controversy arises out of a contract ; and I see no difficulty in carrying out, under the present system of pleading, what is the fair meaning of the words used in section 167. The answer is only to be a statement of facts showing that upon each count the plaintiff has no right to recover. The judgment, if on both claims, would only be for so much money ; and there is no difficulty now in en-tering up judgment as formerly, even if the causes are in tort and contract. The only point upon which there would be doubt as to the proper proceeding, might be as to the execution. In one case (tort) it might be against the person—in the other, against the property. The answer to this is, if the plaintiff thus unites claims, he loses his right to proceed against the body, and must be content with the other execution.

My conclusion is, that the demurrer is not well taken, and that plaintiffs must have judgment.

Judgment for plaintiffs on demurrer, with leave to defendants to answer on pay-ment of costs.

FELLERMAN *a.* DOLAN (*New York Common Pleas, Special Term,* 1858).—This was an action for slander, in which the answers set up : 1. A denial ; and, 2. A counter-claim for a slander uttered by the plaintiff against the defendant.

DALY, J.—Without passing upon the question whether, in an action of slander, slanders by the plaintiff against the defendant may be set up by way of counter-claim, it is sufficient for the decision of this motion to say, that it does not appear from the answer that the defamatory words alleged to have been uttered by the plaintiff against the defendant, had any connection with the subject-matter of this action, except an averment at the end of the answer, that they had stated by way of conclusion. If slander of the defendant by the plaintiff could be the sub-ject of a counter-claim, where the plaintiff brings an action of slander, which I very much doubt, it would have to appear upon the face of the pleadings that it arose out of the transaction which was the foundation of the plaintiff's claim, or was connected with the subject of the action. In this case no connection is shown between the two causes of action. It does not appear that the words uttered by the defendant were uttered by way of recrimination, after the uttering of the words attributed to the plaintiff at the same interview, and in the presence of the same hearers or bystanders ; but, on the contrary, the defendant denies abso-lutely each and every allegation in the complaint.

He first denies that he uttered the words attributed to him in the complaint, and which constitute the plaintiff's cause of action, and then sets up that he has a cause of action against the plaintiff for words spoken by the plaintiff respecting him, shortly before the day when, it is alleged in the complaint, that he uttered the words attributed to him against the plaintiff. This is, therefore, a distinct cause of action, in no way connected with the other action, or forming any part of the transaction on which the plaintiff's claim is founded. The defendant does not set up that what the plaintiff said respecting him induced him to speak of the plaintiff as alleged, in retaliation. On the contrary, he does not admit, but ex-pressly denies, that he said any thing about the plaintiff. By his own showing, then, there is no connection between the two. One did not arise or grow out of

*third* clause in the analysis above made of the first subdivision of section 150 of the Code clearly allows it.

The present is a case in which the counter-claim is directly and immediately " *connected* with the *subject* of the *action.*"

The *subject* of the action is either the right to the possession of the bills of exchange in controversy, or it is the bills of exchange themselves. The defendant's counter-claim is not only connected with, but inseparable from, either or both.

The *object* of the action is damages, but the *subject* is the bills of exchange, or the right to their possession. If the plaintiffs show themselves entitled to these bills, they must recover damages. If the defendants show themselves entitled, then they are in a condition to assert their right to have the amount thereof from the plaintiffs. The plaintiffs' claim, and the defendants' counter-claim, are then connected with the subject-matter which is to be inquired into in this action; and the investigation of the subject will determine whether the plaintiffs are entitled to the bills or to their value as damages, or the defendants are entitled to hold them, with recourse to the plaintiffs as indorsers.

And this suggests the propriety and wisdom of the provision of the Code under consideration, and the reason which induced its enactment. After the question upon which the right of the plaintiffs to have these bills of exchange has been fully investigated and determined in favor of the defendants, there would seem no sensible reason for turning the defendants over to a new suit to recover against these plaintiffs as indorsers, with all the additional expense and delay which such new action might involve, and in which also the title of these defendants might be again put in issue.

It is plausibly argued that the counter-claim provided for in the first subdivision of § 150 embraces only what was formerly called recoupment, and that recoupment implied an admission

---

the other ; and without something of the kind they cannot be said to arise out of the same transaction, or to be connected together at all.

They are distinct causes of action of the same genus or kind, and that is all. The allegation of the defendant at the close of the answer, that all the matters set up in the answer are connected with the subject of the plaintiff's action, does not make it so. We look to the substantive facts on which he rests his counter-claim, to determine whether the claim is connected with the subject of the action or not. The motion must be granted.

of the plaintiff's claim, and sought an abatement therefrom, either to the extinguishment of a part or the whole thereof. Such was, no doubt, the character of recoupment. It implied that the plaintiff's claim was to be allowed, but that another cause of action was to be satisfied out of it. (Nichols *a.* Dusenbury, 2 *Comst.*, 286 ; Vassear *a.* Livingston, 3 *Kern.*, 257 ; Batterman *a.* Pierce, 3 *Hill*, 171.)

But now the definition of counter-claim must be considered in connection with section 174 of the Code, which authorizes the Court in the same action to grant to the defendant any affirmative relief to which he may be entitled.

This opens to the defendant the full right to assert his claim to any relief, legal or equitable, to which, upon the facts alleged in his answer, he would be entitled had he prosecuted his cross-action.

It permits a defendant, therefore, to set up, in answer to an action on a note or bond, facts which show not only that he ought not to be required to pay the note or bond sued upon, but that the note or bond ought to be given up to be cancelled ; or, in the language of Mr. Justice Bosworth, in Gleason *a.* Moer (2 *Duer*, 642), it permits the defendant to ask " any equitable relief to which he is entitled against a legal demand—which formerly could only be had by filing a bill in chancery—and also the affirmative relief, which in equity suits could be had only by a cross-bill ;" and for the same reason it must be held to permit the defendant to have relief in its nature strictly *legal*, if it arises out of the very matter or subject which the plaintiff's claim brings under investigation. (Ogden *a.* Coddington, 2 *E. D. Smith's C. P. R.*, 326, 327.)

Again : the right of the plaintiff to claim, and the right of the defendant to counter-claim, upon any given or supposed facts in controversy, must, we think, be reciprocal.

Now, suppose the defendants were plaintiffs setting up their title to the bills of exchange in question, and claiming to recover the amount of these bills from the Xenia Bank (the present plaintiffs) as indorsers, it could not for a moment be doubted that the then defendants (the present plaintiffs) could, under this same first subdivision of section 150, set up in answer the very facts which they have in this complaint alleged, and pray, as a counter-claim, that these bills be delivered up to them as

their own property. Their claim would arise out of the same transaction, and would be connected with the subject of the action.

It seems to us to follow inevitably, that the principle is the same when, as now, the Xenia Bank are prosecuting the defendants. In either case, there is one controversy involving the same transaction, and the rights which arise out of that transaction— one contest relating to and connected with the same subject, and it may properly determine the whole right of the parties reciprocally ; and we think it was the intention of the Legislature to permit such settlement of the whole matter in dispute in one action.

We are, therefore, constrained to say, that whatever doubts have been heretofore expressed upon the question, whether a defendant could set up as a counter-claim a cause of action at law which could not before the Code have been set up in his plea by way of recoupment, those doubts are not warranted.

Our conclusion is, therefore, upon the question which alone was argued upon this appeal, that the defendants were at liberty to set up as a counter-claim the liability of these plaintiffs as indorsers of the bills of exchange in question, and their title to recover against them as such indorsers.

But, for the reasons first above stated, the defence herein demurred to is defective and insufficient, and upon that ground the order appealed from must be reversed, and the demurrer be sustained with costs of the demurrer at special term to the plaintiffs to abide the event of the suit, but with leave to the defendants to amend within twenty days, and without costs, on this appeal, to either party.