### WADLEY and others *vs.* DAVIS.

Customs must be reasonable, and not contrary to the general principles of law.

A usage of a particular trade may sometimes be proved with the view of raising the presumption that the parties contracted with knowledge of, and reference to it, so that it entered into and became a part of the contract.

In such a case, it must be shown that the party against whom the usage is set up had notice of it, at the time of making the contract, or it must be shown to have been so long continued, universal and notorious that all persons may be presumed to have had notice of it.

A custom to the effect that a person employed to cut staves from another's bolts has a right to take, and appropriate to his own use not only the clippings and corner pieces but the culls, without the consent or agreement of the owner, cannot be sustained.

Such a custom is not only not in harmony with law, but is manifestly against public policy.

To allow a mechanic or artisan, who works up the materials of another, to keep so much of such materials as is not used for the benefit of the owner of the materials is to array his interests in direct opposition to those of his employer. *Per* TALCOTT, J.

In an action by the owners of a stave-mill, to recover, upon a contract, for cutting a quantity of staves, at their mill, for the defendant, at a certain price per thousand, a claim of the defendant against the plaintiffs, for converting to their own use a large quantity of the staves, cull staves and corner pieces, made from the stave bolts of the defendant, which were drawn to the plaintiffs' mill to be cut into staves, arises out of the plaintiffs' claim, and is connected with the subject of the action. Hence it is admissible as a counter-claim, under the Code, (§ 150.)

APPEAL from a judgment for the plaintiffs, rendered in this court on the report of a referee, and from an order of the Oswego special term, denying a new trial.

Wadley *v.* Davis.

*W. A. Poucher,* for the appellant.

*C. Whitney,* for the respondents.

*By the Court,* TALCOTT, J.   This action was originally commenced before a justice of the peace of Oswego county. The action is upon contract, and before the justice the plaintiffs recovered a judgment for $169.25 damages, and $8.05 costs.   From this judgment the defendant appealed to the county court of Oswego county, not, however, stating in his notice of appeal that the appeal was taken on questions of law only.   In the county court the action was referred to a referee to hear, try and determine.   The referee reported in favor of the plaintiffs, and ordered judgment for them for the sum of $157.27 damages.

The defendant made a bill of exceptions, with a view to move thereon to set aside the report of the referee, but before the case was brought to argument in the county court, Mr. Whitney, who had been the attorney for the plaintiffs in the county court, became the county judge of Oswego county, and duly qualified as such.   Thereupon Judge Whitney certified the case into the Supreme Court, under the provisions of section 30, subdivision 13, of the Code.   Pursuant to the provision of that subdivision a motion for a new trial was made, at the Oswego special term of this court, on the case and exceptions.   The motion was there denied, and thereupon judgment for the plaintiffs was entered in the Supreme Court, on the report of the referee.

From the order refusing to set aside the report of the referee, and from the judgment, the defendant appeals to the general term.

The plaintiffs owned a stave mill, and this action is brought to recover the amount claimed to be due to them from the defendant for cutting a quantity of staves for the defendant, at a certain price per thousand.   But one

question of law is presented on this appeal. That question arises under the following circumstances. The defendant, in his answer, alleges, amongst other things, that the plaintiffs converted to their own use a large amount of the staves, cull staves, and corner pieces, made from the stave bolts of the defendant, which were drawn to the plaintiffs' mill to be cut into staves; that the same were the property of the defendant, and were of the value of $150, and the defendant claims damages against the plaintiffs.

On the trial, it appeared from the cross-examination of one of the plaintiffs, that they had converted to their own use some of the culls and corner pieces from the defendant's bolts. The culls are understood to be such bolts as are separated from the others, as not being proper to be converted into staves, by reason of some defect. The corner pieces are pieces cut in the process of manufacture from the bolts which are made into staves, some of these culls and bolts had been by the plaintiffs consumed at the mill, some were used as fuel at the house of one of the plaintiffs, and some were sold in the village, by the cord. On the direct examination resumed, the plaintiff was asked by his counsel, "What has been the custom about who was to have the culls and corner pieces?" This question was objected to by the defendant, "on the ground, that any custom that the cutter was to have the corner pieces and culls of stave bolts received to be cut for customers was contrary to law and public policy." The objection was overruled, and the witness answered: "It has been customary to use all culls and corner pieces, no one ever claimed them, or got them."

Other witnesses, to the number of two or three, testified that the clippings and corner pieces, by custom, belonged to the cutter, or at least, that they had never heard of their being claimed by the owner. Clippings are understood to be pieces cut off in the process of manufacture.

Wadley v. Davis.

The case states that when the defendant was upon the defence, he "offered to introduce further proof of the amount and value of the corner pieces and cull staves made from the appellant's stave bolts, and which the respondents converted to their own use," but the referee excluded the evidence, and ruled and decided "that the respondents were entitled to said corner pieces and cull staves, by the custom." The defendant excepted to the decision.

A usage of a particular trade may sometimes be proved, with a view of raising the presumption that the parties contracted with knowledge of and reference to it, so that it entered into and became a part of the contract. In such a case, it must be shown that the party against whom the usage is set up had notice of it at the time of making the contract, or it must be shown to have been so long continued, universal and notorious that all persons may be presumed to have had notice of it. There was no claim in this case that the defendant had any notice of the usage claimed; nor was the evidence sufficient to establish notice by presumption. (*Wood* v. *Hickok*, 2 *Wend.* 501.)

In the case cited it was held that the testimony of one witness that it was the custom of all grocers to charge interest after ninety days, was not sufficient to charge the defendant with the liability to pay such interest. In this case it is to be observed that nobody but the plaintiff himself pretends to the existence of any custom that the cutter was to have the culls.

In this case the referee did not put his ruling upon the ground that it was a part of the contract, presumptively or expressly, but upon the sole ground that the evidence established a custom, to the effect that the person employed to cut staves from another's bolts, was entitled not only to the clippings and corner pieces, but to the culls. As a custom, it cannot be upheld. Customs must be reasonable, and not contrary to the general principles of law.

A custom which is unreasonable, and in opposition to the general principles of law, is void. (2 *Greenl. Ev.* § 249.) As is said by the court, in *Homer* v. *Dorr*, (10 *Mass.* 26 :) " The usage of no class of citizens can be sustained in opposition to the principles of law." The property in the culls and corner pieces was vested in the defendant. They were of value, as appears by the plaintiffs' own showing, and were an article of merchandise. The defendant might have parted with them by contract. Perhaps a license to take them might be inferred from their having been suffered to remain unclaimed, for a sufficient length of time, in the plaintiffs' mill yard. But a custom for the cutter to take and appropriate them to his own use, without the agreement or consent of the owner, cannot be sustained. Such a custom is not only not in harmony with law, but manifestly against public policy.

To allow a mechanic or artisan, who works up the materials of another, to keep so much of such material as is not used for the benefit of the owner of the material, is to array his interests in direct opposition to those of his employer. This is strongly illustrated in the case of the culls. It appears that in this instance the plaintiffs, and their employees, culled the defendant's bolts, and such we understand, from the evidence, to be the general practice. If the culler is to be entitled to all the bolts which are determined by him to be unfit for staves, he is under a very direct temptation to cull in a careless, not to say fraudulent, manner, so as to increase his own profit at the sacrifice of the interests of his employer. Such a custom, as a custom, binding upon the owner of the property, is unreasonable, contrary to public policy, and cannot have the sanction of law. At the following references will be found some of the cases in which customs have been held to be void, because in opposition to principles of law and public policy. (25 *Wend.* 673. 8 *N. Y.* 690. 18 *Barb.* 290. 12 *Pick.* 107. 14 *id.* 141. 21 *id.* 483. 3 *Yeates,* 318. 6 *Bin-*

Wadley *v.* Davis.

*ney,* 416. 4 *Rawle,* 195. 1 *Watts,* 360. 2 *Wash. C. C. R.* 24.)

The plaintiffs cannot justify the appropriation of the defendant's property by proving any custom to take the property of others. They must show his consent, either expressly, or by circumstances that will authorize the inference. The facts set up in the answer, and sought to be proved by the defendant, arose out of the contract and transaction set forth in the complaint as the foundation of the claim of the plaintiffs, and was connected with the subject of the action. It was therefore admissible as a counter-claim under the Code. (§ 150.)

The other questions presented by the appellant all relate to the findings of fact. It being necessary to order a new trial upon the point already considered, it is unnecessary to compare the findings of the referee with the evidence.

Judgment and order appealed from reversed; new trial ordered; costs to abide the event, and order of reference vacated.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Mullin, Johnson* and *Talcott,* Justices.]