JOSEPH A. BITTING v. SAMUEL A. THAXTON.

Under the C. C. P. there is but one form of civil action, and the defendant may set up as a counter-claim, any claim arising out of the transaction set out in the complaint, in favor of the defendant and against the plaintiff, whether the action arises out of a tort, or a contract.

A copy of an account, taken from a merchants books is only a declaration of the merchant, and is inadmissible in evidence, for the purpose of showing that it converted a quantity of B's tobacco to his own use by selling it to the merchant, and having it credited to his individual account.

It is competent to show that "at the regular time defendant deposited the tobacco with A, he believed A to be solvent," in order to prove that the defendant acted in good faith.

(*Walsh* v. *Hall*, 66 N. C. Rep. 233, cited and approved.)

This was a CIVIL ACTION, tried before his Honor, *Judge Wilson*, and a jury at Fall Term, 1874, of DAVIE Superior Court.

The plaintiff declared in tort against the defendant as his agent.

It was in evidence on the part of the plaintiff, that they were

in 1870, 1871 and 1872, manufacturers of tobacco in the city of Augusta, Georgia, and that the defendant sought employment from them as a travelling salesman during the latter part of October, 1870, and that about 30th of October, 1870, the plaintiffs employed him as such salesman, on the following terms, to wit:

That he was to travel for the house and sell tobacco by sample and report sales to the house, and it was stated that defendant was employed by plaintiffs to avoid their tobacco being sold through commission houses. and to save that expense, but there was no testimony that instructions to that effect were given defendant. That defendant was to receive his expenses and five dollars per day while travelling and selling for plaintiffs.

It was also in evidence that under this agreement the defendant proceeded to Savannah about the 30th of October, 1870, and on reaching that place found six boxes of tobacco at Solomon & Co., and that this with thirty-one other boxes of tobacco, twenty boxes parcel of said thirty-one having been sent by plaintiffs to Fredenburg & Co., and not accepted as coming up to sample, was placed by defendant with one C. A. Reid a commission merchant of Savannah, in November and December, 1870, and March, 1871, and that this tobacco was worth in market at lest $13.50.

It was further in evidence that defendant had about the date he was employed by the plaintiffs, introduced said Reid to plaintiffs, and recommended his credit, and represented him as agent of a flourishing tobacco house of Mocksville, N. C., and that the plaintiffs at that time, in the presence of the defendant, refused to deal with Reid except upon a cash basis.

It was further in evidence, that Reid was generally reported to be insolvent and unreliable, and ultimately failed, and that defendant did not inform plaintiffs of his intention to deposit with Reid, and disclose to plaintiffs that he had so deposited the tobacco with Reid, until the Spring of 1871.

It was further in evidence, that defendant received from

the following sums on account of sales of said tobacco, at the dates set opposite to them :

| | | | | | | |
|---|---|---|---|---|---|---|
| 1870. | November | 15th, | the | sum | of | $100 00 |
| " | " | 19th, | " | " | " | 75 00 |
| " | December | 18th, | " | " | " | 12 85 |
| " | " | 19th, | " | " | " | 3 75 |
| " | " | 23rd, | " | " | " | 25 00 |
| 1871. | January | 5th, | " | " | " | 215 00 |
| " | March | 7th, | " | " | " | 56 50 |
| " | " | 1st, | " | " | " | 25 00 |
| " | " | 17th, | " | " | " | 100 00 |
| " | April | 19th, | " | " | " | 50 00 |
| " | " | 28th. | " | " | " | 103 00 |

but that he did not disclose to plaintiffs that he had ever collected a cent from Reid on account of the tobacco until March, 1872, after he had been discharged from their employment ; and that in disclosing that matter, defendant expressed great sorrow for having done so, and said that his necessities alone compelled him to do it.

Plaintiffs also offered in evidence the deposition of said Reid, to which was annexed as referred to therein a copy of an account between defendant and Reid, touching the 37 boxes of tobacco. The defendant objected to reading said copy of the account, but admitted the delivery of the tobacco as therein stated, but denied that the heading of said account, to-wit : " Samuel A. Thaxton, in account with C. A. Reid," was true—and objected to the evidence as not competent to show the entries on the books of Reid. The objection was sustained by the Court to which plaintiff excepted.

1. It was further in evidence, that after the 18th day of February, 1872, when the plaintiffs testified, defendant was discharged from the 1st day of April, 1872, the day defendant testified he quit plaintiff's service, he went to Savannah and there collected six hundred and ninety-four dollars, from divers debtors of plaintiffs, without the knowledge or consent of

plaintiffs; and that plaintiffs made repeated efforts to induce defendants to account for and pay over to them the losses they had sustained by him, but on one pretence or another, the defendant failed to do so.

The defendant was then examined on his own behalf, and denied the statements of plaintiff's witnesses as to the terms of the contract, and time when he quit plaintiff's service. Also stated that he acted with the best intentions, &c. The defendant then testified that the value of his services exceeded the amount of money received by him; that his wages exceeded the amount of receipts as agent ($810.00) eight hundred and ten dollars. This witness was asked as to the solvency of C. A. Reid, at the time he deposited with him the 37 boxes of tobacco. Plaintiff objected to the evidence, contending that the witness should be confined to his general reputation, the objection was overruled by the Court, and the witness then stated that at the time of said deposit of tobacco, he believed that he was solvent; he also denied that plaintiff gave him instructions not to deal with Reid, and denied that Bitting, in his presence, refused credit to said Reid. On the cross-examination of the plaintiff, defendant proved and put in evidence 50 or more letters, written by the plaintiffs, and addressed to defendant at various points in the South whilst in their service. On the examination of the defendant, his counsel asked what places he visited in certain months, to refresh his memory, said letters, then in the hands of counsel, were exhibited to him; he then stated he had received them shortly after their date, at the places to which they were addressed, and his counsel then proceeded to read some of the letters to the jury. Plaintiffs objected to this method of presenting the evidence, as being suggestive to the witness of the answers he was to make, and as tending unduly to prop the witness' testimony before the jury, but the Court allowed the defendant to proceed in that manner, and he read some of them on the ground that said letters were in evidence, and contained statements pertinent to the issues in the case, and

that the defendant had the right to read them to the jury at some stage of the trial; the others were read after defendant's examination.

The defendant offered in evidence the depositions of W. J. Blair and A. J. Smith, but stated to the Court that certain interrogatories and answers thereto, to-wit, No. ——, in Blair's deposition, and No. ——, in Smith's, were irrelevant, and proposed to omit them. This was objected to by plaintiff, and the Court stated that if plaintiff insisted on reading the whole depositions, they shall be read, but that if the defendant desired to introduce similar evidence, plaintiff could not object to it. Plaintiff insisted and the depositions were read. Thereupon defendant introduced one Peebles, who testified that the services of a travelling tobacco salesman, performing such services as defendant contracted with plaintiffs to perform was worth from $125 to $175 per month and expenses paid. Plaintiff objected to this testimony on the ground that both parties alleged and proved that defendant was to serve plaintiff at a stipulated price; objection overruled on the ground that plaintiffs had insisted on reading similar evidence in the depositions of Blair and Smith. Plaintiff then introduced A. M. Booe and R. M. Payne, who testified that such services were worth $100 per month and expenses. There was testimony tending to show that the plaintiff ratified the act of the defendant in placing the 37 boxes of tobacco with C. A. Reid, and looked to the latter for pay therefor.

Defendant testified that he continued in plaintiff's employment until the first day of April, 1872. Defendant further testified, that he had informed Bitting shortly after depositing the tobacco with Reid of the fact, and that he sent to Bitting by Express the first $100 collected from Reid.

The plaintiff requested the Court, to instruct the jury, that as this was an action of tort, a counter claim founded in contract, such as that set up by defendant, could not be allowed, and must be disregarded by them; and if this be declined, that the counter claim could not be allowed, for the reason,

that the defendant had shown in evidence that he had gone into insolvency—had surrendered the counter claim in his schedule filed therein—and that a trustee had been appointed thereunder, to whom the counter claim had been assigned; which the Court declined to give and plaintiff excepted.

In reference to defendant's insolvency, his counsel stated that he was authorized to make the trustee a party to this action, and defend the same for him—that the recovery would only ascertain the balance between plaintiff and defendant, and if in defendant's favor, it would only go to his trustee. The defendant requested the Court to give the following written instructions, which were substantially given and plaintiff excepted.

(1.) That an agent has a right to be reimbursed, all his advances, expenses, and disbursements made in the course of his agency, on account of and for the benefit of his principal and which grew out of the employment, and are incident to it.

(2.) An agent is not generally liable unless he transcends his agency, or departs from its provisions, or conceals his character as agent, or expressly pledges his own liability.

(3.) That a principal discharges his agent from responsibility for deviations from his instructions, when he accepts the benefit of his act, or ratifies the sale made by him, with full knowledge of all the facts and circumstances connected therewith.

(4.) That an agent is not an insurer of the entire solvency of any party to whom he may sell, but is bound to great care and diligence, not the utmost, but all that a reasonable man under similar circumstances would take of his own affairs.

(5.) That an agent has a general lien, which is the right to retain the property of another for a general balance of accounts, and to retain the property of another until some demand of his be satisfied.

The Judge instructed the jury among other things not exchanged therefor :

(1.) That the action was in the nature of tort, for an alleged conversion of plaintiff's tobacco, by the defendant while acting

as agent for the plaintiff, and for the recovery of money collected by the defendant without authority.

(2.) That whether the plaintiff could recover of the defendant, would depend upon the fact whether the defendant in depositing the 37 boxes of tobacco with C. A. Reid, acted in *good faith, and believed at the time that said Reid was solvent*, and would pay for it; that if he acted *in bad faith*, in that matter, the plaintiff would be entitled to recover the value of the tobacco, and defendant could not retain any part of the price thereof, in satisfaction of any claim for services he might have against the plaintiff, unless the plaintiff after a full knowledge, of all the facts and circumstances connected therewith, ratified the act of his agent ; that if he did ratify the same, then the plaintiff must sustain the loss incurred by the deposit of the tobacco with Reid, and if the plaintiff was indebted to the defendant for services to that amount he might retain the sum received from Reid in payment thereof; plaintiff excepted.

That if the defendant collected money due plaintiff after the 18th of February, 1872, and before 1st day of April, 1872, (which was not denied,) and if he acted in good faith therein, *believing at the time*, he had authority so to do, or if in fact he continued in the service of plaintiff, and was his agent until 1st April, 1872, then he might also retain thereof to satisfy his claim, if any, for services rendered the plaintiff. Plaintiff excepted.

The Court also instructed the jury, that in this connection, they might consider the contents of the plaintiff's letter, to the defendant; that in reference to plaintiff's claim for services, as each party alleged a special contract, that the testimony offered as to the value of defendant's services was irrelevant, that the Court therefore withdraws it from the consideration of the jury, and directed them that they should take all the other testimony laid before them, on the part of the plaintiff and defendant, and say what was the contract entered into by the parties ; was the contract that the de-

fendant was to receive from the plaintiff $5.00 per day and expenses, as stated by the plaintiff, or was he to receive $150 per month, and expenses, when travelling for plaintiff as stated by defendant? That it was their duty to ascertain what was due the plaintiff from the defendant, and what sum was due to the defendant from the plaintiff, and after deducting from the greater the less sum, should render their verdict in favor of the party thus found in excess of the other. Plaintiff excepted.

The jury rendered their verdict finding all the issues in favor of the defendant, and that there was due to him from the plaintiff, the sum of $810.00. Rule for a new trial. Rule discharged, appeal to the Supreme Court granted plaintiff.

*Bailey* and *Haywood*, for appellant.
*J. W. Graham*, contra.

READE J. The plaintiff claims that the defendant as his agent received so much money for him, and withholds, and also converted property belonging to the plaintiff, to the defendant's own use, which was worth so much, and for these causes the action is brought.

The defence is a counter claim for services rendered as agent in respect to the matters complained of.

The jury adjusted the claims of the parties, and finding a balance due the defendant, of so much, returned a verdict for the defendant for the balance due him.

The verdict must be sustained unless there was some error of law on the trial.

1. The first error alleged by the plaintiff is, that his declaration is in tort, and that no counter claim can be allowed.

"The distinction between actions at law and suits in equity, and the forms of all such actions, heretofore existing are abolished, and there shall be in this State, hereafter but one form of action," &c. C. C. P. sec. 12.

"All the forms of pleading heretofore existing are abolished," &c. C. C. P. sec. 91.

A counter claim must be " a cause of action arising out of the contract, or transaction set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action." C. C. P. sec. 101, sub-div. 1.

If there is anything settled in our new system it is that there is but one form of action. There are torts and contracts just as there used to be ; but there are not several forms of action as there used to be, and pleadings are not suited for different forms of action as they used to be ; but are all suited to one form, whether the subject of the action be a tort or a contract. And when the plaintiff files his complaint, setting forth the " transaction," whether it be a tort or a contract the defendant may set up any claim, which he has against the plaintiff, connected with the transaction set up in the complaint ; and this is called a " counter claim." And when the plaintiff states the " transaction " in his complaint he cannot by calling it one name or another—as tort or contract, cut off the defendant's counter claim growing out of the same transaction. It is the *transaction* that is to be investigated, without regard to its form or name. *Walsh* v. *Hall*, 66 N. C. Rep. 233, is probably as good an illustration as could be given ; A gave B a horse in payment for a tract of land. The horse got back into the possession of A, and B sued A for the horse. And A was permitted to set up as a counter claim that B had cheated him as to the land. So here, the defendant's counter claim is " connected with the transaction" out of which grows the plaintiff's claim, and whether the transaction be called tort or contract makes no difference.

It may be proper to say that where the plaintiff's claim is founded on a contract, then the defendant may set up any contract as a counter claim, whether connected with the plaintiff's claim or not.

2. The plaintiff in order to prove that the defendant had converted thirty-seven boxes of the plaintiff's tobacco to his own use, by selling them to one Reid, offered a copy of Reid's book in evidence in which Reid had credited the defendant

with the tobacco as his own, and not as agent for plaintiff. And the evidence was rejected.

Reid's book was only Reid's declaration, and that was not competent evidence. And certainly the copy was not better than the original. The only view in which it could be used would have been to strengthen Reid's testimony, who was examined as a witness, by showing that he had made the same statement before, and it would be very slight for that purpose, but it was not offered with that view; but it was offered as evidence of the fact itself.

3. The defendant as a witness was examined as to the solvency of said Reid and he answered, " that at the time of the deposit of tobacco he believed he was solvent." The plaintiff objected to this and said " that the witness should be confined to his general reputation."

There certainly could be no objection to the witness stating his belief about it. What his belief amounts to, was another question. Reputation is not the only evidence of solvency or insolvency. If the object was as it seems to have been, to show that the defendant acted in good faith, it was competent for that purpose, but it left the question open as to whether he had exercised reasonable diligence in making inquiries to support his belief.

His Honor's charge upon a number of points is set out and there is a general exception on the part of the plaintiff.

We have not discovered any error. There is no error.

PER CURIAM.                    Judgment affirmed.