Deford v. Hutchison.

---

## J. B. Deford v. S. E. Hutchison.

REPLEVIN — *Pleading* — *General Denial* — *Sale* — *Evidence* — *Judgment.* In an action of replevin by a mortgagee for the possession of mortgaged property, the defendant in possession thereof may, for the purpose of defeating the plaintiff's right of recovery, prove, under the general denial, a sale of the property by her to the plaintiff subsequent to the execution and delivery of the mortgage, and his refusal to take the goods and pay her the contract price. *Further held,* That in such an action, where the plaintiff is permitted to retain the goods, the defendant may plead such sale, and if maintained on the trial, may recover judgment against the plaintiff in the alternative for a return of the property, or the value of her interest therein.

*Error from Franklin District Court.*

THE facts are fully stated in the opinion.

*John W. Deford,* for plaintiff in error.

*W. Littlefield,* for defendant in error.

Opinion by STRANG, C.: Action for replevin. Plaintiff held a chattel mortgage upon a stock of millinery goods, store furniture and fixtures in possession of the defendant. By the terms of the mortgage the goods were to remain in possession of the defendant until condition broken, or the plaintiff deemed himself insecure. The plaintiff, deeming himself insecure, demanded possession of the goods, which was refused. He then commenced his action of replevin in the district court of Franklin county, Kansas, April 23, 1887. Defendant first answered by a general denial, and afterward filed an

amended answer, in which she admitted the execution and delivery of the note and mortgage sued on, but averred that, after the execution and delivery of the note and mortgage, the plaintiff agreed to purchase of her the entire stock of goods, furniture and fixtures, at a price to be determined by an invoice to be taken by Holt, the agent of the plaintiff, and to pay her the difference between the value of the goods so ascertained and the amount of plaintiff's lien, in cash. She also alleges that Holt, under the instructions of the plaintiff, took an invoice of the goods, furniture and fixtures, and that, after the defendant had submitted to the interruption and inconvenience necessarily incident to the taking of the invoice, the plaintiff failed and wholly refused to carry out his said agreement to take the goods, and pay the defendant therefor the difference between the amount of the invoice and the amount of the plaintiff's note, notwithstanding she offered the plaintiff the goods according to said agreement, and demanded the money due her thereon. The invoice of said goods amounted to $1,259.09, and the furniture and fixtures to $335.75, a total of $1,594.84. There was a third defense in the amended answer, in which defendant claimed damages for the wrongful taking of the property by the plaintiff. The plaintiff replied by a general denial, and the case went to trial by the court and jury, at the October term, 1887. Verdict for the defendant for $808.37 as the value of her interest in the property, and as damages $28.29. Afterward, on motion for a new trial, the court required the defendant to remit $88.14 of the amount of her interest in the goods, and $3.09 from the amount of her damages, which was done; whereupon the court overruled the motion for a new trial, and entered judgment upon the verdict as modified, for $720.23, as the interest of defendant below in the goods, and $25.20 for damages.

The first ground for reversal discussed by the plaintiff in his brief, is the refusal of the court to require the defendant, in the trial below, to elect upon which defense set out in her answer she would reply. Plaintiff suggests that the second

and third defenses set out in the answer are inconsistent with each other. The second defense sets out a sale of the goods replevied, by the defendant to the plaintiff, after the execution and delivery of the note and mortgage, and his refusal to carry out the contract of sale. This defense is based upon matters arising subsequent to the execution of the plaintiff's mortgage. The third count in the answer sets up matters and things, which if they amount to a defense, relate to the original transaction between the parties. This count may contain some things that are not matters of defense at all, but no motion to make it more definite and certain was interposed, and no demurrer was pleaded to it. Whatever matter of defense it stated was not inconsistent with the second defense. If the second defense failed, she might still have whatever benefit could be derived from the matters stated in her last defense. The sale of the goods subsequent to the making and delivery of the note and mortgage was not inconsistent with the defendant's version of the original transaction sought to be detailed in the third count.

The plaintiff complains of the action of the court in overruling his objection to the following question: "Who first suggested the mortgage being given?" This was objected to as being incompetent. It cannot be said that this question was incompetent. It would be immaterial unless followed by something rendering it material; but, as a preliminary question, it was not incompetent. The next question objected to was, "You may state all the conversation." To this question the plaintiff objected, but stated no ground of objection, and the court properly overruled it. The following question was asked: "Did you read it [the mortgage] before you signed it?" The answer was, "Mr. Deford read it, but I did not understand it." There was no objection to this question, but plaintiff objected to the answer, failing, however, to assign any ground of objection, and he made no motion to strike the answer out. This ruling cannot be complained of. The next question was, "What part of it was it that you didn't understand?" This question was objected to as incompetent,

and sustained by the court, showing the court to be with the plaintiff so far as the substance of this part of the examination was concerned, as soon as the counsel put himself within the rule and stated his ground of objection.

The next complaint is the ruling of the court against the plaintiff's objection to the following question: "What would have been the aggregate value, in your judgment?" This question was probably not competent, since, if the sale of the goods by the defendant to the plaintiff is enforced, the invoice of the goods is their fair value; and if said sale is not enforced, the plaintiff is only required to return to the defendant any surplus in his hands after paying his debt and costs. But, under the instructions of the court, and the verdict of the jury, the admission of this evidence is not prejudicial error. The court instructed the jury that, if they found the existence of the contract of sale contended for by the defendant, the value of the goods would be the invoice of the same, made by Holt. The jury evidently found for the defendant on the allegation of sale of the goods by her to Deford, and in enforcing said contract considered the amount of the invoice of the goods as the value of the goods. But if the plaintiff is right in his argument upon his tenth assignment of error, when he says that the jury should have found what the whole property was worth, then this question might have been competent and proper.

Plaintiff complains of the exclusion of testimony. We do not think any error exists here. The witness was asked her understanding in relation to the matter of inquiry, and if she understood certain things from either Deford or Miss Hutchison. Her understanding was not evidence. What she understood from Deford or Miss Hutchison, was not evidence. What she heard Miss Hutchison say in regard to the matter might have been. But she was not asked that question.

The sixth complaint relates to the charge of the court. The averment is that the court erred in telling the jury that it was necessary that plaintiff "should have some reasonable ground for deeming himself insecure." The instruction, as a

21 — 45 KAS.

whole, shows that the court did not instruct the jury that the plaintiff should have some reasonable grounds for deeming himself insecure.   After using the above words, the court. adds: "But that is not the question we are trying here.   If he deemed himself insecure, he must be the sole judge of that question, and we are not trying the question of whether he had reasonable grounds or not, but the fact whether or not he deemed himself insecure."   We do not think the instruction, as a whole, misled the jury.

We think the instruction complained of in the seventh assignment is the law.   If, subsequent to the delivery of the note and mortgage, and while the defendant was in the actual possession of the goods, the plaintiff purchased the goods of the defendant, and agreed to pay her the difference between the amount of his lien thereon and the invoice of the goods, he waived his rights as mortgagee and stood upon his rights as vendee; and, the goods being in the defendant's actual possession, she had a right to hold them until he paid her the purchase-price, or the difference between his lien and the amount of the invoice.

The next error assigned relates to the instructions of the court, in which the court told the jury that they might find the value of the fixtures from the evidence.   There is, at least, no reversible error in this instruction, when considered in connection with the evidence, the verdict of the jury, and its modification by the court.   Holt did invoice the fixtures. The evidence shows that he put them down in the book, and attached a value to them.   It is true he put them in at the price the defendant said they were worth, instead of putting them in at a value fixed by himself.   But he had a right to do so, and, having done so, they were none the less invoiced because of the fact that he had them put in at a price fixed by her.   He might have taken her judgment upon the goods, and if he had, and had actually put them in at a valuation fixed by her, it would still have been his invoice.   A little figuring shows that the jury took the fixtures at the invoice. The invoice of the goods and fixtures was $1,594.84.   The

amount of the plaintiff's lien, including the sum paid the First National Bank, taken from the invoice of the goods and fixtures, leaves the amount of the defendant's interest in the same as found by the jury; and, taking the amount of the goods from the amount of the goods and fixtures, the remainder is the invoice of the fixtures. It follows that the jury accepted the invoice of the fixtures as taken, and did not find the value of the fixtures from the evidence, and hence the instruction did no harm. But the court finally required the defendant to remit $88.14 from the amount found by the jury, and the probability is that the court cut down the price of the fixtures that much, which would likely place them at a fair valuation.

The failure of the court to instruct the jury in relation to matters set up in the third count of defendant's answer did not work any injury to the plaintiff, since it is patent that the jury gave that defense no consideration. They took the invoice as to the value of the goods, and the damages found was evidently the interest on the sum the jury found as due the defendant from the plaintiff on the sale of the goods.

The tenth and eleventh errors relate to the verdict, and the action of the court in modifying it. There is nothing in the complaint in these matters that requires this court to reverse. The jury in effect found the aggregate value of the property. They said the defendant's interest in the property was $808.37; that her interest in the property remained at that sum, after paying the First National Bank mortgage, and the amount due the plaintiff on his mortgage; and, as we have already said, the whole value of the property is thus shown, and is $1,594.84. It was not necessary in this case to find the general value of the property. (*Earle v. Burch*, 33 N. W. Rep. 254.)

The plaintiff also complains because the court did not grant him a new trial. The evidence on the application for a new trial was conflicting, and that which was new was impeaching in its character. All of this was addressed to the discretion of the trial court. Not being satisfied that the court abused its discretion, its ruling will not be disturbed. These

are all the questions that are seriously discussed in the plaintiff's brief. In his oral argument, however, counsel for plaintiff discussed another, and perhaps the most important question of the case. In this argument he claimed that the second count of defendant's answer could not be set up in this action; that this action is replevin, an action in tort, and the defendant's cause of action, being founded on contract, cannot be set off against the plaintiff's second cause of action. In the argument, the cause of action set up in defendant's second count was treated as a set-off. Considering it in this light, the question is not free from doubt. But should the cause of action complained of be considered as a set-off? Is it not rather a counterclaim? Paragraph 4178, Gen. Stat. 1889: "The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action." . A counterclaim must be a claim existing in favor of a defendant and against a plaintiff to an action under such circumstances as that a several judgment might be had between them in relation thereto: And, first, it must arise out of the contract set forth in the petition as the foundation of the plaintiff's claim; or, second, it must arise out of the transaction set forth in the petition as the foundation of the plaintiff's claim; or, third, it must be connected with the subject of the action. The cause of action set out in the defendant's second count is a cause of action existing in favor of the defendant and against the plaintiff, under such circumstances as that a separate action might have been maintained thereon in favor of the defendant against the plaintiff, and if maintained, a several judgment rendered therein. In fact, the plaintiff claims that the defendant should have so proceeded. The cause of action set out in the defendant's answer as her second defense did not arise out of any contract set forth in the petition as the foundation of the plaintiff's claim. If any contract may be said

to be the foundation of the plaintiff's claim, it was that contained in the plaintiff's mortgage on the defendant's goods, which is a distinct contract from that set up as the foundation of the defendant's second cause of action. Did said cause of action of the defendant arise out of the "transaction" set forth in the petition as the foundation of the plaintiff's claim? What is to be understood by the word "transaction" as found in our statute? In Remedies and Remedial Rights, by Pomeroy, in discussing a statute like ours, the author says:

"As already stated in a former chapter, the difficulty in arriving at the true interpretation of the term 'transaction' lies in the fact that it had no strict legal meaning before it was used in the statute. Being placed in immediate connection with the word 'contract,' and separated therefrom by the disjunctive 'or,' one conclusion is certain, at all events, namely, that the legislature intended by it something different from and additional to 'contract.' The most familiar rules of textual interpretation are violated by the assumption that no such signification was intended. The only question at all doubtful is, How far did the law-makers design to go, and how broad a sense did they attach to the words? Is it to be used in the widest popular meaning, or must it be narrowed into some limited and technical meaning, and thus be made a term of legal nomenclature?" (Section 769.)

From the same author we learn that the whole of a fraudulent scheme, or all the connecting statements and acts constituting a cheat, would form a transaction in its broadest sense; and so we may say that the connecting acts and statements, oral and in writing, concerning a trade, may be in the same sense, a "transaction." A contract is the result of a transaction, while the transaction covers all things done and said which result in a contract. In *Woodruff v. Garner*, 27 Ind. 4, Judge Frazer, puts it thus:

"The plaintiff's cause of action is the alleged fraud of the defendant in procuring the deed sought to be rescinded. The defendant's cause of action averred in the counterclaim does not arise out of the plaintiff's cause of action, for it cannot even exist consistently with it. If the fraud alleged by the plaintiff was perpetrated, then the defendant cannot have any

right of action whatever; so the defendant found it necessary to deny the fraud. But the deed sought to be set aside constitutes a part of the transaction upon which the plaintiff and the defendant both rely for a recovery. It is the link which forms the direct connection between the two diverse causes of action. The transaction set forth in the complaint was not simply the alleged fraud — it was the entire business or matter of agreeing to sell and purchase the land, and of executing and delivering the deed in pursuance of such agreement. The plaintiff averred that the defendant was guilty of fraud, and such fraud was therefore a part of the transaction according to the plaintiff's version. The defendant's cause of action arose out of the same transaction; in fact, it was the entire transaction, except the element of fraud, which he asserted did not exist. The term 'transaction' refers to the actual facts and circumstances from which the rights result, and which are averred, and not to the mere form and manner in which the facts are averred."

The word "transaction," then, as employed in our code, would seem to include all that is said and done in connection with a purchase and sale, or other trade; and all that is said and done in connection with the perpetration of a fraud or cheat.

Woodruff, J., in *Xenia Branch Bank v. Lee*, 7 Abb. Pr. 372, p. 389, uses the following language:

"This division of the section shows that there may be a counterclaim when the action itself does not arise on contract, for the second clause is expressly confined to actions arising on contracts, and allows counterclaims in such or any other causes of action also arising on contract; and this may embrace, probably, all cases heretofore denominated 'set-off,' legal or equitable, and any other legal or equitable demand liquidated or unliquidated, whether within the proper definition of set-off or not, if it arise on contract. The first subdivision by its terms assumes that the plaintiff's complaint may be set forth as the foundation of the action, a contract, or a transaction. The legislature, in using both words, must be assumed to have designed that each should have a meaning; and, in our judgment, their construction should be according to the natural and ordinary signification of the terms. In this sense, every contract may be said to be a transaction; but every transaction is not a contract."

The form of plaintiff's action is in tort.   The cause of his action, as set forth in his petition, is the alleged wrongful detention of the goods and fixtures described in his petition. This cause of action, technically considered, does not arise out of a contract, though it would not be far out of the way to say the note and mortgage are the foundation of the plaintiff's claim.   In the light of our code, and judicial interpretations of similar codes, can we look beyond the technical cause of action, to the whole transaction set forth in the petition as the plaintiff's cause of action—that is, to the taking of the note and mortgage, the allegation of insecurity, the demand and refusal to deliver the property, and the detention of them by the defendant, and say that the defendant's second defense arises out of the "transaction" set forth in plaintiff's petition, and thus sustain said defense?   Some cases go quite as far as this. ( *Xenia Branch Bank v. Lee*, 7 Abb. Pr. 372; *Judah v. Trustees*, 16 Ind. 56–60; *Bitting v. Thaxton*, 72 N. C. 541–549.) But we prefer, so far as this case is concerned, to put the matter upon what we consider safer ground, and justify the defendant's second cause of action upon the ground that it is directly connected with the subject of the plaintiff's action. In *Xenia Branch Bank v. Lee*, above cited, which is referred to with approval in Pomeroy in his work cited herein, Justice Woodruff reaches the conclusion that, even if the defendant's cause of action does not arise out of the "transaction" set forth in the complaint, it is directly and immediately connected with the subject of the action.   This was an action in trover for damages for the conversion of certain bills of exchange.   The answer was placed as a counterclaim.   It set up the drawing of the bills, their indorsement by plaintiffs, their delivery to the Ohio Trust Company, their transfer to the defendants for full value and without notice, demand of payment, non-payment and notice thereof to plaintiffs, and prayed judgment against the plaintiffs as indorsers for the amount due on the drafts.   The judge says :

"The subject of the action is either the right to the possession of the bills of exchange, or the bills themselves.   The

defendant's counterclaim is not only connected with, but is inseparable from, either or both. The object of the action is damages, but the subject is the bills of exchange, or the right to their possession."

Again referring to Pomeroy, we quote:

"Some judges have said that in all possessory actions, and all actions to establish property, the 'subject of the action' denotes the things to assert a right over which, or to obtain the possession of which, the action is brought — as the land in ejectment, and many equity suits, or the chattels in replevin."

The author himself puts it thus:

"It would, as it seems to me, be correct to say, in all cases legal or equitable, that the 'subject of the action' is the plaintiff's main primary right. Thus, the right of property and possession in ejectment and replevin, the right of possession in trover or trespass, the right to money in all cases of debt and the like, would be the subject of the respective actions."

So far as the case at bar is concerned, it is immaterial whether we treat the chattels themselves, for the possession of which the action is brought, as the subject of the action, or adopt the other view, and say that the "primary right of the plaintiff," to wit, his right to recover the possession of the chattels described in his petition, is the subject of the action; for, in either view of the matter, the defense complained of relates to the subject of the action, since it affects equally the chattels themselves and the plaintiff's right to recover their possession. The defendant would have had a right, under the general denial, to prove her contract of sale set up in her second defense, for the purpose of showing that the plaintiff was not entitled to the possession of the property, the possession of which he sought. The plaintiff's right to recover the possession of the goods is founded upon his mortgage. But if the defendant's contention that she sold the goods to him subsequent to the execution of the mortgage, by which sale he was to pay her the difference between the sum of his own lien on the property and the lien in favor of the national

*Replevin; general denial; sale; evidence.*

bank, and the invoice of the goods, is true, she had a right to refuse their delivery until he paid her the money coming to her on the sale.    Under the general denial, she is entitled to any defense that defeats the plaintiff's right to recover the possession of the property, but not to prove a cause of action in her favor against the plaintiff.    Can the defendant, by pleading the sale, recover a judgment against the plaintiff for a balance her due?    It seems clear to us that she can, under our statute relating to counterclaims.    Since the adoption of codes in most of the states, the doctrine of set-off and recoupment has undergone much change.    In New York, the former rule that in an action for a tort, a counterclaim, no matter whether arising on contract or based upon another tort, could not be allowed, has been so far modified as to allow the interposition of a counterclaim, in the full sense of the code, whether arising on contract or based upon a tort, in an action for a tort, whenever such counterclaim is founded upon a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or whenever it is connected with the subject of the action. ( Wat. Set-off, § 616; *Woolen Mills v. Eull*, 37 How. Pr. 299; *Dougherty v. Stamps*, 43 Mo. 243; *Kisler v. Tinder*, 29 Ind. 270; *Tinsley v. Tinsley*, 15 B. Mon. 454; *Railroad Co. v. Thompson*, 18 id. 735.)

The action was brought for injuries done the plaintiff's boat while passing through the canal, caused by a break in the canal, alleged to have resulted from defendant's negligence. The defendant set up a counterclaim that the break itself was caused by the plaintiff's negligence, and prayed a judgment for the damages.    This counterclaim was sustained, the court saying, "If it does not arise out of the transaction set forth in the complaint, it certainly is connected with the subject of the action." (*McArthur v. Canal Co.*, 34 Wis. 139–146.)

"A claim on the part of the defendant for the price and value of the identical goods which are the subject of the action, is the cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's

claim, or is at least connected with the subject of the action, and is strictly a counterclaim." (30 N. Y. 383.)

"Since the code, however, of 1852, it seems if the defendant's demand is sufficient, a defendant may not only defeat a plaintiff's claim by recoupment, but recover a balance, notwithstanding the former rule . . . that a defendant could only use his claim to defeat that of the plaintiff." (37 How. Pr. 301; 2 E. D. Smith, 317.)

"Counterclaims under the code [since 1852] embrace both set-offs and recoupments, as they were understood prior to that time." (*Pattison v. Richards*, 22 Barb. 146.)

"But while the counterclaim authorized by the code embraces both set-off and recoupment, it is broader and more comprehensive than either." (3 Kern. 256; 7 How. Pr. 294.)

"It secures to the defendant the full relief which a separate action at law, bill in chancery, or a cross-bill would have secured him on the same state of facts." (37 How. Pr. 301; 2 Duer, 642.)

"It may be for either liquidated or unliquidated damages (34 Barb. 447); and for unliquidated damages arising on contract different from the contract on which the action is brought (4 E. D. Smith, 285), and of an equitable or legal nature." (37 How. Pr. 301; 6 Bosw. 453.)

"It is not required that the counterclaim itself shall be founded in, or arise out of the contract set forth in the petition; but it is sufficient that it arise out of the transaction set forth in the petition, or is connected with the subject of the action." (15 B. Mon. 454–459; 63 Barb. 500; 7 Abb. Pr. 372–389; 66 N. C. 233–237.)

The counterclaim is allowed, though the plaintiff's form of action is in tort.

"The plaintiffs, trustees of the Vincennes University, sue to recover the value of certain bonds belonging to the corporation, received by the defendant as its attorney, and converted by him to his own use. He admits the receipt and detention of the securities, and alleges, by way of counterclaim, that the university was indebted to him for certain professional services particularly described, including his services in procuring these very bonds, among others, to be issued to it by the state, and prays judgment for the amount of such indebtedness."

In pronouncing upon the validity of this answer as a counterclaim, the court says:

"The point is that the action is in the form of trover, an action *ex delicto*, and that under such action the defendant cannot avail himself of any claim which he may have against the plaintiffs for services rendered, or money expended on their behalf, even if it was in the recovery of the identical property which is the subject of the action. We are clear it was the intention of those who initiated and inaugurated the present code of procedure, that parties litigant might, and perhaps should, determine in each suit all matters in controversy between them which could legitimately be included therein, keeping in view their substantial rights. As proceedings so distinct as those were at law and in equity are no longer required to be separated, but are now blended in one action, we are unable to see any reason for requiring two actions to determine a controversy in which the rights of each party are so dependent upon the rights of the other as in the case at bar." (*Judah v. Trustees*, 16 Ind. 56–60.)

See also *Bitting v. Thaxton*, 72 N. C. 541–549; *Xenia Branch Bank v. Lee*, 7 Abb. Pr. 372; 4 Rob. 668; 10 Bosw. 143; 33 Barb. 320; 4 Keyes, 335.

After a careful reading of our code in relation to counterclaims, and a somewhat thorough examination of the books upon the question involved in this last assignment of error, we conclude that the defendant not only had the right, under her general denial, to prove the matter set up in her second count to defeat the plaintiff's cause of action, but that, having plead it, she should be allowed to prove it as a counterclaim, as an affirmative cause of action against the plaintiff, and recover in this case a balance against the plaintiff. We therefore recommend that the judgment of the district court be affirmed.

*General denial; evidence; judgment.*

By the Court: It is so ordered.

All the Justices concurring.